IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIGISMUNDO RAMOS-BALCAZAR,

      Petitioner,

vs.                                   CIVIL NO.  12-161 JC/CG
                                        CRIM. NO. 11-377 JC

UNITED STATES OF AMERICA,

      Respondent,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Petitioner Sigismundo Ramos-Balcazar's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, (Doc. 1), Petitioner's *Memorandum and Brief in Support of Petitioner's § 2255*, (Doc. 2), Respondent's *Response to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence*, (Doc. 9), and Petitioner's *Reply Motion to Government's Opposition of § 2255*, (Doc. 10). Petitioner claims that his attorney was constitutionally ineffective for failing to object to several enhancements under the United States Sentencing Guidelines, resulting in a sentence beyond the statutory maximum. (*See, generally*, Doc. 2). The United States contends that Petitioner's attorney provided effective assistance of counsel and that the Petition should be dismissed. (Doc. 9 at 2). The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that the Petitioner be **DISMISSED WITH PREJUDICE**.

    **I.**    **Background**

        **a.**    **Arrest and Plea Negotiations**

Petitioner Sigismundo Ramos-Balcazar is a Mexican national who was arrested by Border Patrol agents in Hidalgo County, New Mexico, on January 13, 2011. (*See* CR 11-377 JEC Doc. 1). Petitioner admitted to being in the United States illegally. (*Id.*). A records

check of Petitioner's criminal past revealed that he had previously been deported from the United States in August of 2000 after being convicted of burglary in the second degree in North Carolina in 1997. (*Id.*; Doc. 9 at 2). Petitioner was charged with unlawfully reentering the United States after having previously been deported in violation of 8 U.S.C. § 1326(a)(1), (2). (*Id.*). He was also charged with the more serious crime of reentry after having previously been deported as an aggravated felon in violation of 8 U.S.C. § 1326(b)(2). The § 1326(a) charge carries a maximum sentence of two years in prison whereas the § 1326(b)(2) charge carries a maximum sentence of twenty years. 8 U.S.C. §§ 1326(a)(1), (2); (b)(2).

Petitioner appeared before United States Magistrate Judge Karen B. Molzen on January 18, 2011. Federal Public Defender Philip Medrano was appointed to represent him. (CR 11-377, Doc. 2; Doc. 4). Shortly thereafter the United States sent Mr. Medrano a proposed "fast track" plea agreement under FED. R. CRIM. P. 11(c)(1)(C). (Doc. 9 at 3).[1] Under the terms of the proposed agreement, Petitioner would plead guilty to both charges. (CR 11-337, Doc. 12). Pursuant to the United States Sentencing Guidelines ("USSG"), the base level offense for Petitioner's charges would be eight. (*Id.* at 2); USSG § 2L1.2(a). This base level offense would be enhanced pursuant Petitioner's "most serious prior criminal conviction as determined by the Court after Defendant's change of plea." (*Id.* at 2). The plea agreement indicated that a prior conviction for an aggravated felony would result in a sixteen point enhancement. (*Id.* at 3). The agreement provided that Petitioner would forfeit the right to seek a downward departure from the advisory guideline range or to appeal a sentence which fell within the guideline range as determined by the Court. (*Id.*

_____

[1] Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides that "the plea agreement may specify . . . that a specific sentence or sentencing range is the appropriate disposition of the case" and that "such a recommendation or request binds the court once the court accepts the plea agreement. FED. R. CRIM. P. 11(c)(1)(C). The rule allows the parties to stipulate, among other things, to an offense level under the Sentencing Guidelines. *See United States v. Veri*, 108 F.3d 1311, 1313-14 (10th Cir. 1997).

at 4-6). Petitioner would further waive the right to appeal or collaterally attack his conviction or sentence except on the issue of his attorney's ineffectiveness in negotiating the plea agreement. (*Id.* at 6).

In return for entering into the proposed plea agreement, the United States agreed that Petitioner would be entitled to a reduction of up to three points from his base offense level for accepting responsibility. (*Id.* at 4-5). He would also be eligible for an additional three point reduction for agreeing to the fast track plea agreement. (*Id.* at 3). The United States agreed to recommend a sentence at the low end of the guideline range should Petitioner accept the plea agreement. (*Id.*).

Petitioner claims that Mr. Medrano brought the proposed agreement to his attention and they discussed the advisability of accepting it. (Doc. 2 at 9). Petitioner informed Mr. Medrano that he was willing to accept a plea but he wanted Mr. Medrano to investigate his prior criminal record because he was worried that his prior burglary conviction would be used to enhance his sentence. (*Id.*). Petitioner states that Mr. Medrano returned at a later date and stated that he had checked his record and that "there was nothing he could do." (*Id.*). He recommended that Petitioner accept the agreement and that failure to do so would result in the United States withdrawing the offer and Petitioner receiving a far harsher sentence of up to twenty years. (*Id.*).

Petitioner waived his right to be indicted on February 22, 2011, and pled guilty to a one-count information in accordance with the 11(c)(1)(C) plea agreement. (CR 11-377, Doc. 10; Doc. 12; Doc. 13). Chief United States Magistrate Judge Richard Puglisi presided over Petitioner's change-of-plea hearing and he engaged Petitioner in an extended colloquy regarding his decision to plead guilty. (CR 11-377, Doc. 28 at 1-8). Petitioner represented that he had gone over the plea agreement with Mr. Medrano and that Petitioner understood the rights he was giving up and the consequences of pleading guilty. (*Id.* at 3). Petitioner told Judge Puglisi that he was satisfied with Mr. Medrano's advice and representation. (*Id.*).

Petitioner represented that no one attempted to force him to plead guilty and that he was pleading guilty because he was in fact guilty. (*Id.* at 4-5). He stated that he understood he was giving up his right to appeal any sentence so long as it was within the guideline range. (*Id.* at 5).

### b.    Presentence Report and Sentencing

A presentence report ("PSR") was prepared by United States Probation following Petitioner's guilty plea and was disclosed to Petitioner and his attorney on May 6, 2011. (Doc. 9 at 5). The base level offense for unlawfully reentering the United States was eight points. USSG § 2L1.2(a). The base level offense was increased by sixteen points because Petitioner had previously been deported following a conviction for a crime of violence - the 1997 North Carolina burglary. (Doc. 2 at 3); USSG § 2L1.2(b)(1)(A)(ii). The base offense level was then reduced by three points because of Petitioner's acceptance of responsibility and another three points for agreeing to the fast track plea agreement. (Doc. 2 at 3). The total offense level was eighteen. (*Id.*; Doc. 9 at 5).

United States Probation assessed Petitioner seven criminal history points, resulting in a criminal history category of four. (Doc. 2 at 3; Doc. 9 at 5). The seven criminal history points break down as follows: three points for the 1997 for the North Carolina burglary conviction, two points for two separate driving under the influence ("DUI") convictions from 2008 and 2009, and two points for having committed the instant offense while still on conditions of release. (Doc. 2 at 3); USSG § 4A1.1(d). A total offense level of eighteen with a criminal history category of four resulted in a guideline range of 41-51 months of imprisonment. (Doc. 9 at 5).

Petitioner was sentenced by United States District Judge John E. Conway on June 22, 2011. (CR 11-377, Doc. 15). Judge Conway asked Mr. Medrano if he had any objections to the PSR and Mr. Medrano replied that he did not. (CR 11-377, Doc. 27 at 2). Judge Conway then accepted the 11(c)(1)(C) plea agreement and he stated that he had

reviewed the PSR and considered the sentencing guidelines. (*Id.* at 3-4). Judge Conway then sentenced Petitioner to 41 months imprisonment, which was the lowest sentence available under the guidelines. (*Id.* at 3). Judge Conway further sentenced him to two years of unsupervised release and imposed a special assessment fine. (*Id.* at 3-4).

## II.    Standards of Review

### i.    28 U.S.C. § 2255

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Because Petitioner is proceeding *pro se*, the Court will liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for her where her allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110).

### ii.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, she must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). In considering the two-prong *Strickland* test, the Court may proceed directly to the prejudice prong of the analysis if that is more convenient. *Id.* at 697 ("If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is easier to resolve.").

### III.  Analysis

Petitioner claims that Mr. Medrano was constitutionally ineffective for a variety of reasons. Petitioner's primary argument is that Mr. Medrano failed to investigate his criminal history and that Mr. Medrano should have objected to the use of the 1997 burglary conviction in enhancing his offense level and criminal history score. (Doc. 2 at 4-5, 8, 10-12). Petitioner further claims that his 2008 DUI conviction should not have counted towards his criminal history score because his plea in that case was neither knowing nor intelligent and that Mr. Medrano was ineffective for failing to realize this. (*Id.* at 4). Finally, he asserts that Mr. Medrano was ineffective for failing to appeal Judge Conway's sentence. (*Id.* at 5).

Respondent contends that Mr. Medrano provided effective assistance of counsel and that he adequately investigated Petitioner's criminal background, including the burglary conviction. (Doc. 9 at 10-11). It argues that Mr. Medrano had no viable theory for objecting to its inclusion in the PSR. (*Id.*). Similarly, Respondent contends that there were no viable

grounds for objecting to the inclusion of the 2008 DUI conviction in calculating Petitioner's criminal history score. (*Id.* at 13-15). Respondent argues that Mr. Medrano was not ineffective for failing to file an appeal because Petitioner had explicitly waived the right to appeal when he pled guilty. (*Id.* at 15-16). Finally, even if Mr. Medrano had provided ineffective assistance, Respondent argues that the Petition should be dismissed because Petitioner has not demonstrated prejudice. (*Id.* at 16-17).

### a.   1997 Burglary Conviction

Petitioner argues that Mr. Medrano failed to investigate the facts behind his 1997 burglary conviction and failed to object to its inclusion in the PSR. (Doc. 2 at 4-5). Petitioner submits that Mr. Medrano should have objected to the sixteen level enhancement under USSG § 2L1.2(b)(1)(a)(ii) as well as the three point increase to his criminal history score under USSG § 4Al.l and § 4Al.2 because he was sixteen years old at the time of the conviction. (*Id.* at 4, 8-9, 11). As a crime committed before the age of eighteen, Mr. Medrano purportedly should have realized that it could not be used to enhance either the offense level or the criminal history score under the guideline rules. (*Id.*).

Petitioner is correct that offenses committed before the defendant has turned eighteen years old ordinarily cannot be used to enhance the defendant's total offense level or criminal history score under USSG § 2L1.2(b)(1)(a)(ii) or USSG § 4Al.l. *See* Application Note 1(A)(iv) for USSG § 2L1.2(b)(1); USSG § 4A1.2(d)(1). However, this protection does not apply when the juvenile was prosecuted and convicted as an adult under the laws of the prosecuting jurisdiction. *Id.* Unfortunately for Petitioner, while he was two months shy of his 17th birthday when he committed the burglary offense in North Carolina, the state District Attorney chose to prosecute him as an adult offender. (Doc. 9 at 11); N.C. GEN. STAT. § 7B-1604(a) ("Any juvenile . . . who commits a criminal offense on or after the juvenile's sixteenth birthday is subject to prosecution as an adult."). Therefore, pursuant to

the guideline rules, probation was required to consider the burglary conviction when calculating Petitioner's offense level and criminal history score.

Contrary to Petitioner's assertions, the record demonstrates that Mr. Medrano was well aware of the relevant sentencing guideline rules regarding juvenile convictions and that he did investigate the facts of Petitioner's burglary conviction. Petitioner himself admits that, after asking Mr. Medrano to look into his criminal history, Mr. Medrano returned and told him that he had checked his record and that "there was nothing he could do." (Doc. 2 at 9). Furthermore, when Judge Conway asked Mr. Medrano if he had anything to say on behalf of Petitioner at sentencing, Mr. Medrano replied

> Your honor, unfortunately for my client - I did investigate it, but the prior conviction for burglary was entered when he was 16 years old or committed when he was 16. Unfortunately, North Carolina treats - that person can be treated as an adult, even if they're under age 18. [Petitioner] just wanted to call that to the Court's attention.

(CR 11-377 Doc. 27 at 2). Based on this record, the Court finds that Mr. Medrano provided effective assistance of counsel in that he investigated the facts surrounding Petitioner's juvenile conviction. He further recognized that he did not have a valid objection to the offense level and criminal history enhancements flowing from that conviction.

In his reply, Petitioner suggests that the Court should not accept Respondent's assertion that he was charged as an adult in North Carolina. (Doc. 10 at 2-3). He bases his objection on the Federal Rules of Evidence, arguing that Respondent's argument amounts to "hearsay on top of inferance [sic]." (*Id.* at 2). He also contends that the Respondent has not provided the Court with the best evidence of his conviction. (*Id.* at 3 (suggesting that Respondent should produce "the actual judgment of conviction[,] transcript and or documentation.")). Because Respondent has purportedly failed to prove that he was charged as an adult, he contends that the Court has no choice but to find that his counsel was ineffective. (*Id.*). The Court is unpersuaded.

The question presented in this Petition is not whether Respondent has adequately proven that Petitioner was convicted as an adult in North Carolina, but whether Mr.

Medrano provided effective assistance of counsel in investigating the facts underlying that conviction. *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Petitioner has provided no evidence or argument to suggest that Mr. Medrano was wrong to rely on the PSR and his own independent investigation in determining that Petitioner was convicted as an adult in North Carolina. *See, e.g.*, *Gardner v. McKune*, 242 F. App'x 594, 597 (10th Cir. 2007) (noting that it is reasonable for an attorney to rely on a criminal history report prepared by a court officer, even when that report turns out to be inaccurate). Petitioner has never claimed that he was not, in fact, charged as an adult, and has not shown how further investigation by Mr. Medrano would have resulted in a more favorable outcome. Petitioner has therefore failed to show that Mr. Medrano provided ineffective assistance of counsel.

### b.   2008 Driving Under the Influence Conviction

Petitioner argues that his 2008 DUI conviction in California should not have counted toward his criminal history category because he was not provided with counsel in that case and that his guilty plea was neither knowing nor voluntary. (Doc. 2 at 4). He alleges that Mr. Medrano failed to investigate the facts of this offense and failed to object to it being included in the calculation of Petitioner's criminal history score. (*Id.* at 4, 8). Respondent concedes that Petitioner was not represented by counsel when he pled guilty in 2008, but argues that Petitioner has not shown that his plea deal was involuntary and that there was no basis for Mr. Medrano to object to its inclusion in the PSR. (Doc. 9 at 13-15).

With regard to Mr. Medrano's duty to investigate the facts surrounding the DUI conviction, the Court first notes that Petitioner has not alleged that he told Mr. Medrano that he did not have counsel when he pled guilty or otherwise explain why he thought Mr. Medrano should investigate that conviction. (Doc. 2 at 4, 8). Without that information, it would not be unreasonable for Mr. Medrano to rely on the PSR in assuming that the 2008

DUI conviction was valid. *Strickland*, 468 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *Gardner v. McKune*, 242 F. App'x at 597.

However, even if Petitioner had informed Mr. Medrano that he had pled guilty without the benefit of counsel, there was no basis to object to its inclusion in the PSR because Petitioner had validly waived his right to counsel in that case. The Tenth Circuit has long held that, so long as the defendant properly waived his or her right to counsel, there is no impediment to using that conviction to enhance a defendant's criminal history score under the Sentencing Guidelines. *United States v. Cruz-Alcala*, 338 F.3d 1194, 1197 (10th Cir. 2003). The Court has also held that defendants carry a heavy burden in attempting to collaterally challenge the constitutionality of a prior conviction. *Id.* ("Once the prosecution establishes the existence of a [prior] conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm. Moreover, there is a presumption of regularity that attaches to final judgments, even when the question is waiver of constitutional rights.") (citing *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir. 1996)) (internal quotation marks omitted). To meet his burden, the defendant may not "simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution." *United states v. Wicks*, 995 F.2d 964-977-78 (10th Cir. 1993).

Petitioner was repeatedly advised of his right to counsel in the 2008 DUI case. Petitioner signed two key documents at the time of his conviction: the "Misdemeanor Rights Form" and "Misdemeanor Advisement of Rights, Waiver and Plea Form." (Doc. 9 at 43-44). The 'Rights Form' indicates that Petitioner has a number of rights, including the right to a speedy trial, to subpoena and confront witness and to have a court-appointed attorney

10

represent him. (*Id.* at 43). The form bears Petitioner's signature and the signature of an interpreter stating that the document was read to Petitioner and interpreted for his benefit. (*Id.*). The form also bears the signature of the judge stating that the defendant represented that he had read and understood the terms of the form. (*Id.*). The 'waiver and plea form' again advises Petitioner that he has the right to be represented by counsel. (*Id.* at 44). It lays out the maximum and minimum penalties as well as possible collateral consequences of pleading guilty, including deportation or losing a drivers license. (*Id.* at 44-45). Petitioner signed the form indicating that, notwithstanding the right to counsel, he was willing and prepared to plead guilty. (*Id.* at 44).

Based on the 'Rights Form' and 'Waiver and Plea Form', the Court finds that Petitioner validly waived his right to counsel in his 2008 DUI case. *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (Stating that a waiver must be "knowing, intelligent, or voluntary" and that the record must show that the defendant "knows what he is doing and his choice is made with eyes open."). Petitioner was twice advised of his right to counsel during the case and he signed two forms indicating that he understood that right. His signature also reflects that he understood the maximum and minimum penalties, the rights he was giving up by pleading guilty, and that he was ready and willing to plead guilty. The Tenth Circuit has upheld waivers of counsel in factually similar situations. *See, e.g.*, *Cruz-Alcala*, 338 F.3d at 1197-98. Based on these facts, the Court can perceive no valid means by which Mr. Medrano could have objected to the use of the 2008 conviction in calculating Petitioner's criminal history score. Therefore, Mr. Medrano's failure to object to the PSR does not constitute ineffective assistance of counsel.

### c.    Failure to Appeal

Petitioner's final claim is that his attorney was ineffective for failing to appeal his sentence. (Doc. 2 at 5). Respondent retorts that Petitioner voluntarily waived his right to

appeal in his fast track plea agreement and therefore Mr. Medrano cannot be considered ineffective for failing to appeal. (Doc. 9at 15-16). The Court concurs.

The Court first notes that nowhere in the Petition does Petitioner actually state that he asked Mr. Medrano to file an appeal. However, the finding that Petitioner did not request a direct appeal does not end the Court's inquiry. The Supreme Court has held that, even where a defendant does not explicitly request that an appeal be filed, counsel may still be ineffective if he failed to consult with a client about an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Counsel is required to consult with his client about an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In considering whether an attorney must consult about a potential appeal, the Supreme Court stated that

> A highly relevant factor in this inquiry will be whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases where the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id.*

In this case, there is no reason that Mr. Medrano would have consulted with Petitioner about filing an appeal since Petitioner received the benefit of his bargain by accepting a plea agreement which substantially reduced his criminal exposure from 20 years to no more than 51 months. Additionally, there was no reason to consult with Petitioner about a direct appeal because Petitioner had waived his appellate rights in his plea agreement. (CR. 11-377, Doc. 12 at 5-6). In his plea colloquy with Judge Puglisi, Petitioner twice stated that he understood he was giving up the right to appeal by entering into the plea agreement. (CR 11-377, Doc. 28 at 5). Judge Conway also reminded

12

Petitioner at his sentencing that he had waived all rights to appeal. (CR. 11-377, Doc. 27 at 4). The Tenth Circuit has repeatedly approved the use of appellate waivers in plea agreements. *See, e.g.*, *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Based on the present record, the Court finds that Mr. Medrano was not ineffective for failing to consult with Petitioner about a direct appeal following the acceptance of his guilty plea.

## IV.     Recommendation

For the reasons set forth in the opinion, the Court finds that Petitioner's counsel was not constitutionally ineffective. The Court **RECOMMENDS** that Petitioner  Sigismundo Ramos-Balcazar's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, (Doc. 1) be **DISMISSED WITH PREJUDICE**.

The Court further recommends that a certificate of appealability be **DENIED**.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

13